The next case called for argument is People v. Dallacosta. Council, whenever you're ready, may proceed. May I please support? Good afternoon. I'm Eugenie from the Fourth District Office of the State Health Offender. And I'm here today to throw a welcome down here. Welcome. Welcome. Welcome. Welcome. But please speak up. That mic does not amplify. Okay. An often quoted legal scholar once stated, it is deeply rooted in our moral sense of fitness that punishment entails blame and that therefore punishment may not be justly imposed where the person is not landworthy. In seeking recognition of that conclusion, affirmative defenses, such as compulsion, has been allowed by our General Assembly. With the abolition of the death penalty and the changes in the law regarding punishment of juveniles, Joshua, who was only 15 years old at the time of this event, has compulsion available as an affirmative defense. Thus, when Joshua alleged that his counsel was ineffective for failing to present a compulsion defense on his behalf where the evidence indicated that his mother forced him to commit the offense of murder, Joshua presented a gist of a constitutional claim entitling him to further relief or proceedings under the Post-Conviction Hearing Act. To meet the gist standard at the first stage, the petitioner may only show that his claim is not based on an indisputably meritless legal theory. Joshua's claim that counsel was ineffective for failing to present or investigate a compulsion defense cannot be categorized as an indisputably meritless legal theory. To survive this first stage, a claim of ineffective assistance of counsel, the petitioner may only show, one, that it's argued that counsel's performance fell below the objective standards of reasonableness. And, two, it is argued that the defendant was prejudiced. First, counsel's performance arguably fell below the objective standard of reasonableness where compulsion was available as a defense. The compulsion... Do you really think that's true? I mean, the mother wasn't holding a gun to his head at the time the murder was committed. There was a significant period of time involved, wasn't there? There may be, Your Honor. And that's the point. If compulsion was available as a defense, perhaps he would be able to use it. This is only at the first stage of the Post-Conviction Proceeding Act. Well, my question to you is, if a judge looks at that in the petition and then looks at the instruction for compulsion and says, no way, I would have ever given that instruction. Does that then eliminate the argument of just the constitutional claim if it's patently frivolous? No, Your Honor. No. Okay. Or if not, because this is the first stage of the Post-Conviction Proceeding Act. All of his allegations should be taken as true. And if they're taken as true, he needs that low standard, that just standard that allows him to be appointed counsel to move to the second stage. The compulsion statute provided that a person is not guilty of an offense other than that which is punishable by death. Here, effective July 1st of 2011, the General Assembly determined that no offense in this state could be punishable by death. When abolishing the death penalty, the General Assembly stated, notwithstanding any other law to the contrary, the death penalty is abolished. And a sentence to death may not be imposed. Accordingly, the stated intent of the legislature was that no offense in Illinois was punishable with death. In briefing, the state relies on people being collected. Could you speak just a little bit louder? I missed what you said. Okay. Sorry, Your Honor. That's okay. In briefing, the state relies largely on people being collected, which provided that any defendant charged with an offense punishable by death, albeit discretionary, could not rely on a compulsion defense. However, that decision was premised upon the availability of death as a penalty for at least one offense in this state. In that case, the Illinois Supreme Court noted it. That the General Assembly twice reaffirmed their intent that death was an available penalty. But here, the General Assembly has taken the mouthpiece over the evolution of this law and decided that this state will no longer punish any offense with death. And in so doing, compulsion became an available defense for any charged offense. Moreover, because Joshua was under the age of 18, in fact, only 15 years old at the time, no offense he was charged with was punishable with death. The United States Supreme Court, in 2005, Roper v. Simmons, found that it was unconstitutional to impose the death penalty upon a person under the age of 18. The state realizes it became a 2004 case, which is now outdated by the evolution of the law. He based his decision upon the fact that the charged offense had the availability of death as a penalty. That is no longer the case, since Roper, 2005, decided that a juvenile could not be executed. The compulsion defense, which is prohibited only for those charged where death was a possible penalty, is available to Joshua as a defense, because as a 15-year-old, he could not be penalized with death. And since the evolution of the death penalty in 2011, the offense of Roper is no longer punishable with death. Thus, where Joshua's counsel failed to investigate or present a compulsion defense, his attorney's performance arguably fell below the objective standards of reasonableness. Secondly, Joshua arguably was prejudiced by counsel's failures. Joshua alleged that he was compelled by his mother to commit this offense. He stated in his affidavit that she placed a gun to his head and threatened to kill him if he did not follow through with her request. Yet, at his stipulated bench trial, no compulsion defense was offered on his behalf. Arguably, if such a defense was offered, then a 15-year-old Joshua would not now be sentenced to spend the rest of his life in prison. In sum, arguably, counsel's performance fell below the objective standards of reasonableness, where he failed to present or investigate his compulsion defense, and Joshua was prejudiced by counsel's failures. Accordingly, he did present a just defense claim, and he asked his court to remand the matter before the proceedings began at this stage. If there are no questions from the court. I don't believe there are.  Thank you, counsel. Counsel? Jennifer Camden on behalf of the people. The central issue in this case is whether the abolition of the death penalty in 2011 by the legislature had any effect on the statute creating the affirmative defense of compulsion. The defendant argues that it did. The state argues that it did not. And if it did not, then the ineffective assistance of the people would be lost. Based on it was indisputably meritless, and this court should affirm the first-stage dismissal of the petition. As a preliminary matter, I believe that the issue of the defendant's age is a subsidiary issue to the larger issue of whether the abolition of the death penalty had an effect on the compulsion statute. And that's because of the Haney decision. If adults can now raise compulsion as a defense in murder cases due to the abolition of the death penalty and its claimed effect on the compulsion statute, then obviously so could the defendant. But if adults still can't raise compulsion as a defense in murder cases, then under Haney, neither could the defendant. Haney was premised on the idea that there's only one murder statute, and the defendant in Haney, though a juvenile, was not permitted to raise compulsion as an affirmative defense. And that reasoning would hold true today. So I think that the primary issue to address is the interplay of the death penalty statute and the abolition narrow and the compulsion statute. Is that really for us to decide, or is that for the trial court to decide? This whole issue of whether or not compulsion should or should not have been raised, is that really something that we should decide at this stage of the proceedings? This is a first-stage, very low-threshold kind of case. And we're talking about whether it should or should not have been. No, it got very vague very quickly. I agree. I agree. But given the unusual posture of this case, I think that's where, I mean, both parties went there in the breeze. Because the argument is that the defense of compulsion had no chance of succeeding, that it was a legally meritless claim. And the reason that the state argued that it was a legally meritless claim is that it argued that the complete bar on raising the affirmative defense of compulsion survived the abolition of the death penalty. Right. Okay. So let me ask you a question. You're familiar with the case that's pending on direct appeal, right? Or not? I'm familiar with it. Because there is one. You're on. Yes. That he's appealed certain aspects and is asking this court to vacate the sentence and judgment, right? Hypothetically, if this court did that, would this appeal be moved in your judgment? Put you on the spot there. No. Well, Claire, I had seen in the record that the disposition of this case had been held in abeyance pending the resolution of that case. And that's where I thought we were until I was told, and I think opposing counsel has more information on this than I do, that that order was lifted. So you mean there was an order in the trial court? No, Your Honor. I saw it. This court? Yes, Your Honor. Well, not in this case, but in the Cindy Stearns case. I saw an order in the Cindy Stearns case in my record, in the record in the post-conviction Del Costa case, saying that this case was held in abeyance pending the resolution of that case. The direct appeal? Yes. So I. So what happened? Why are we here? I thought the court might have had reasons for setting the argument, and then I think opposing counsel has more information about the status of this order. Okay, but we'll ask her when she returns. You're welcome to be here. We're just curious how we got here. Yeah. But I would like to address the Gleckler opinion, which in 1980, the Illinois Supreme Court looked at the compulsion statute and held that as a matter of legislative intent, the compulsion defense is, quote, unavailable to one charged with murder. And the important thing to note is that that was the court's holding as a matter of legislative intent. It was independent from any consideration of the interplay between the compulsion statute and the death penalty, which the death penalty statute, so the availability of the death penalty in the state of Illinois at all. I found it extremely interesting that Gleckler traced the evolution of the availability of death as a punishment for murder and going right back to 1827 when the legislature first adopted a compulsion statute and made it applicable only to offenses not punishable with death. The court held that the legislature's intent back in 1827 was to, and then again in 1961 when the revised statutes were adopted, was to apply the common law rule that one ought himself to die rather than to escape through the murder of an innocent. In other words, the legislature intended to codify that common law rule and to codify the rule that the law will not excuse or forgive the wrong choice that a person makes when he is presented with that impossible situation. So what mattered to the legislature in both 1827 and 1961 was not that murder was, quote, punishable by death, but that compulsion as a defense should not excuse it. The court in Gleckler painstakingly traced the history of the availability of death as a penalty. It's gone from mandatory in 1827 to discretionary in 1867 and then to prohibited altogether in 1972, back to discretionary in 73, back to prohibited in 75, back to discretionary in 1977. And what I want to point out is that none of that has ever been held to have affected the availability of the compulsion defense in murder cases. Instead, the court held in Gleckler that the meaning of the compulsion statute has been, quote, settled since 1827. And today, I would argue that the legislative intent is no less clear than it was in 1827 or 1961 or in 1980. So what the defendant is asking this court to do is to indirectly, I agree, but still to reverse 190 years of uninterrupted public policy in this state and asking this court to rule that a compulsion defense – to change over 190 years of public policy in the state of Illinois and must have intended, when it abolished the death penalty, to permit this compulsion defense for a first-degree murder charge. We're currently in the third time period in which the death penalty has been unavailable in the state of Illinois and in which murder has not been punishable by death. And yet the defendant does not cite any cases showing that compulsion was unavailable – or, I'm sorry, was available in murder cases in those two periods in the 70s when the death penalty was unavailable in the state. And no cases since 2011 when the death penalty was again abolished. And I would argue that more should be required to change that than a ruling that the legislature must have meant to amend the compulsion statute when it voted to abolish the death penalty. And I'd also direct the court's attention to the part of Butler and a section of that case at pages 160 and 161 when it discussed the tension between that argument and the plain language rule and stated that, as a state court of last resort, we have a duty to remain faithful to the intent of the legislature regardless of the literal meaning of the statute. In other words, the court interpreted the meaning of the compulsion statute to state that it was intended to exclude murder. And if the compulsion statute is now a less perfect vessel or expression of that legislative intent, Gleckler held that the vagaries in the availability of the death penalty in the state of Illinois did not affect the meaning of the compulsion statute. Gleckler instilled the law, I checked, and until it's overruled or until the legislature steps in and amends the compulsion statute, this court should find that compulsion was unavailable as an affirmative defense to the defendant and that consequently Go ahead and finish your sentence. That the court correctly dismissed the petition on the first page. Thank you, counsel. Thank you. Counsel? Can you answer why we're here? Yes, I can. Okay. Okay. Counsel, now representing the state on this appeal is not the counsel that's representing the state on the direct appeal. So she's unfamiliar with the record of Joshua Delacosta on the direct appeal. Speak up. Sorry. When this appeal was originally filed, he also filed his direct appeal. There were some complications with the record, and so the post-conviction appeal was stayed. At the time the direct appeal was filed, I filed a motion to submit the brief in this post-conviction appeal and unstay the appeal. And this court at some point later accepted the motion or allowed the motion to unstay and this appeal proceeded forward. But at a later time than the direct appeal. So let me ask you. Are you involved in the direct appeal? Yes, I am.  So let me ask you the question. If for some reason you succeed on the direct appeal, do you believe this would be removed then? It depends on the issue or the issues that he would receive relief on. If this court finds that the trial forward committed error in allowing the motion to suppress or not allowing the motion to suppress, allowing his statement to come in to evidence, he would be entitled to a new trial. And his eventual relief in this case would be a new trial. But if this court finds that he's only entitled to a retroactive sentencing hearing because he is a juvenile and he was improperly transferred, then this is not removed because he would be entitled to a new trial if counsel was in favor of an effective preparation of an expulsion case. So in that case, it would not be removed. I would like to address counsel's argument that the legislative intent is clear. I agree. The legislative intent is clear. The legislature has changed its mind. In 1980, when Gleckler was decided, it was clear that the legislature intended death as a penalty. It was ruled unconstitutional in 1972. A year later, in 1973, the court, the General Assembly, reenacted the death penalty. It was again found unconstitutional in 1975. In 1977, the General Assembly acted and found it and recodified death again as a penalty. Now, in 2011, the General Assembly has decided that no more. No offense in this state is punishable by death. That's their last word. That's their intent. And where the compulsion statute only excludes those offenses punishable by death, not murder, not aggravated kidnapping by ransom, which is referenced in the record, and not treason, it means offenses punishable by death. The state would have us guess at what offenses are now not allowed to have a compulsion defense because no offense in this state is punishable by death. Statutory rules of interpretation suggest that that language has now been written out of the murder statute that allows death penalty as a possible penalty for murder. Because the legislature has clearly stated no offense carries the penalty of death. And as such, Joshua was entitled to the compulsion defense. And I ask this court to amend the manner for both proceedings and the post-conviction hearing. Thank you, counsel. We appreciate the brief arguments of counsel, but take this case under advisement. There are no further oral arguments scheduled before the courts. We're adjourned.